UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK LAUREN O'CONNOR,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                Defendant.

Case No. C18-5128 RSM

**ORDER REVERSING AND REMANDING THE CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the ALJ erred by rejecting his testimony and several medical opinions, and erred in determining his reasoning capability. Dkt. 20. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

Plaintiff is currently 54 years old, has a high school education, and has worked as a general merchandise clerk, furniture salesperson, stock clerk, stores laborer, and loan officer. Administrative Record (AR) 39, 673. In August 2015, plaintiff applied for benefits. AR 89. He alleges disability as of May 1, 2015. AR 654. Plaintiff's applications were denied initially, on reconsideration, and by the ALJ after a hearing in April 2016. AR 88, 99, 110, 122, 47, 25-40.

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 1

Plaintiff appealed to this court, which reversed and remanded for further proceedings. AR 779-90. On remand, after the ALJ conducted a second hearing in August 2017, the ALJ issued a decision finding plaintiff not disabled. AR 686, 654-74.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the May 2015 alleged onset date.

**Step two:** Plaintiff has the following severe impairments: gout, obesity, mild cervical and lumbar degenerative disc disease with chronic musculoskeletal pain, anxiety disorder, and alcohol abuse.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work, lifting 20 pounds occasionally and 10 pounds frequently. He can sit, stand, and walk each for six hours in an eight-hour workday. He must be permitted to alternate between sitting and standing. He can occasionally stoop, crouch, and climb ladders, ropes, and scaffolds. He can frequently climb ramps and stairs, crawl, and kneel. He must avoid exposure to workplace hazards. When walking further than 250 feet, he may require the use of a cane or walking stick in one hand. He can complete tasks that require a General Educational Development (GED) reasoning level of 3 or less.

**Step four:** Plaintiff can perform past relevant work as a general merchandise clerk and is therefore not disabled.

**Step five:** Because plaintiff was found not disabled at step four, the ALJ did not proceed to step five.

AR 657-74. The Appeals Council did not assume jurisdiction, and the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.984(d), 416.1484(d).

## DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 2

the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the Commissioner's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

**A.  Reasoning Level**

Plaintiff argues the ALJ erred in determining he could perform work at a reasoning level of 3, and in concluding that his past work as a general merchandise clerk did not exceed a reasoning level of 3.

**1.  State Agency Determinations**

In 2017, Eugene Kester, M.D., and Thomas Clifford, Ph.D., reviewed plaintiff's medical records and filled out the "Mental Residual Functional Capacity Assessment" portion of "Disability Determination Explanation" forms. See AR 756-58, 821-23. Plaintiff argues the ALJ erred by not adopting a reasoning-level limitation that was implied by Dr. Kester and Dr.

Clifford.[3]  Dkt. 20 at 8-10.  An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record."  *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)).

Dr. Kester and Dr. Clifford opined that plaintiff was "[m]oderately limited" in the abilities to "maintain attention and concentration for extended periods" and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  AR 757, 822.  They further explained that plaintiff "may experience occasional lapses in [concentration, persistence, and pace].  However, [with] reasonable breaks during the workday, he can keep to a schedule, maintain regular attendance, and complete a normal workweek [without] special accommodation."  *Id.*

Plaintiff asserts, based on the following series of assumptions, that the ALJ rejected these opinions without providing any reason.  Dkt. 20 at 9.  The Disability Determination Explanation forms list three example occupations that plaintiff could perform.  Plaintiff assumes that, because all three examples are reasoning level 1 or 2 (*i.e.*, unskilled work), the agency must have concluded that plaintiff could not perform at level 3.  Dkt. 20 at 10.  He further assumes that the example occupations, and the implied limitation to level 2, must have been based on Dr. Kester's and Dr. Clifford's opinions.  Dkt. 20 at 8.  Specifically, the level 2 limitation must have been

---

[3] Plaintiff also states conclusorily that the ALJ's reasons for discounting Dr. Kester's and Dr. Clifford's social limitation to occasional public contact "were not sufficient."  Dkt. 20 at 9.  This claim, barely contended and unsupported by explanation or authority, is deemed waived.  *See Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue); *see also Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003), *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address arguments not raised with specificity in briefing).

based on their opinions on concentration, persistence, and pace. Dkt. 20 at 9. Not one of these assumptions is supported by any authority or grounded in the record. The forms specifically state that plaintiff is not limited to unskilled work. AR 758, 824. While the forms do indicate that they used the guideline for unskilled work as a framework, the most likely explanation is, as the forms state, that "all potentially applicable Medical-Vocational Guidelines would direct a finding of 'not disabled' given [plaintiff's] age, education, and RFC." AR 758-59, 823. Next, plaintiff provides no authority or even logic supporting the assumption that concentration, persistence, and pace impairments provide the basis for reasoning level limitations. Common sense suggests that the ability to do complex work is distinct from the ability to persist at work. Finally, plaintiff provides no authority or logic supporting the assumption that the example jobs reflect plaintiff's maximum ability.

Plaintiff has not shown that the ALJ's reasoning level 3 determination reflects an error of law or was not based on substantial evidence. The court concludes that the ALJ did not err by concluding plaintiff had the RFC to perform work at reasoning level 3.

**2.    Prior Work**

Plaintiff contends that his past work as a general merchandise clerk exceeded a reasoning level of 3, and thus his RFC excluded it. Dkt. 20 at 4-7; Dkt. 22 at 8. Plaintiff concedes that the vocational expert (VE) testified to the contrary, but argues that the ALJ *sua sponte* should have challenged the VE's testimony. Dkt. 22 at 8; *see* AR 705. A "VE's testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). An ALJ "need not inquire *sua sponte* into the foundation for the expert's opinion." *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017). The hypothetical that the ALJ posed to the VE contained all the limitations

in the RFC and the "ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff's attorney did not challenge the VE's testimony at the hearing. The Ninth Circuit has "h[e]ld that when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel." *Shaibi*, 883 F.3d at 1109. The court's logic applies equally to plaintiff's challenge to the interpretation of reasoning levels 3 and 4, because the court relied on its holding in *Meanel v. Apfel* that "'at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal.'" *Id.* (quoting *Meanel*, 172 F.3d 1111, 1115 (9th Cir. 1999)). In *Shaibi*, the plaintiff presented evidence for the first time on appeal. Here, plaintiff does not even have new evidence to offer, but merely plaintiff's counsel's interpretation of the Dictionary of Occupational Titles definitions of reasoning level 3 and 4. Plaintiff's argument is foreclosed by his failure to raise it during administrative proceedings.

**B.      Medical Opinions**

Plaintiff argues the ALJ erred by rejecting the opinions of examining doctor Kimberly Wheeler, Ph.D., and treating physician Floyd Smith, M.D.

An ALJ may only reject a treating or examining doctor's controverted opinion by stating "specific and legitimate" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 6

own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

### 1. Kimberly Wheeler, Ph.D.

Dr. Wheeler examined plaintiff in June 2016 and diagnosed him with generalized anxiety, unspecified depression, and gave a rule-out diagnosis of history of alcohol abuse. AR 1016-17. Dr. Wheeler opined that plaintiff had marked, or very significant, limitations in the abilities to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting (due to pain behavior such as grimacing and odd postures), and complete a normal work day and work week without interruptions from psychologically based symptoms. AR 1017-18.

The ALJ gave Dr. Wheeler's opinions "little weight" because they were "grossly inconsistent with the overall medical evidence of record." AR 670. Specifically, plaintiff's mental health symptoms improved with therapy, he did not pursue medication treatment until 2017, and he regularly demonstrated strong cognitive and social functioning. The third reason is not specific or legitimate, because Dr. Wheeler's opinions did not rest on cognitive or social deficits. The other two reasons are addressed below.

#### a. Improvement with Therapy

Impairments that can be effectively controlled by medication or treatment are not considered disabling for purposes of Social Security benefits. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ relied on a September 2016 treatment note stating that plaintiff reported that therapy was helpful. AR 664-65 (citing AR 1574). Plaintiff told the provider that his "pain can set off anxiety. When it does, … he will experience dizziness, chest pressure, numbness, sweating, anxiety." AR 1574. Therapy was helpful in

reducing the duration of these "panic attacks" and reducing their frequency from daily to weekly. AR 1574, 1576.

However, Dr. Wheeler's opinions did not rely on the presence of panic attacks. Plaintiff did not report panic attacks to her, and she did not diagnose him with panic disorder or include any findings about panic attacks. *See* AR 1015-16. Instead, Dr. Wheeler documented rumination and a "focus on pain" as contributing to plaintiff's mental health impairments. AR 1016, 1018.

Effective treatment of panic attacks (if a decrease to only weekly panic attacks can be described as effective) does not undermine any findings on which Dr. Wheeler relied and thus was not a specific, legitimate reason to discount Dr. Wheeler's opinions.

### b. Failure to Seek Treatment

An "unexplained or inadequately explained failure" to seek treatment or follow prescribed treatment can be a valid reason to discount a *claimant's* testimony, because it suggests the claimant does not find his impairments disabling. *See Trevizo*, 871 F.3d at 679-80. It is less persuasive as a reason to discount a medical opinion, however, because a doctor cannot control whether a claimant seeks treatment. Moreover, the Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–300 (9th Cir. 1999) (finding error in rejecting doctor's opinion based on lack of treatment) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

Even if failure to seek or follow treatment is adequate to discount a doctor's opinion, an ALJ must consider a claimant's reasons for such failure. *See Trevizo*, 871 F.3d at 679-80. Here,

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 8

plaintiff testified that he believed his underlying problem was pain; thus his mental health impairments would cease if he got effective pain treatment. *See* AR 692. Plaintiff's reason is supported by at least one mental health professional. In September 2016, a psychiatrist examined plaintiff and concluded that "[m]aximizing treatment of pain would [benefit plaintiff] as the pain has impacted all areas of his life." AR 1576. The ALJ noted plaintiff's proffered explanation, but did not address it. *See* AR 661 ("He … noted that he has not been taking any medication for his condition because his anxiety stems from pain."). Other evidence indicates that plaintiff is particularly susceptible to side effects from drugs. *See*, *e.g.*, AR 663 (the ALJ noted "he stopped taking gabapentin, nortriptyline, and methocarbamol due to side effects and limited effectiveness"), 1706 (allergic to caffeine). The ALJ did not fulfill the obligation to consider plaintiff's reasons for not taking medications to treat his mental impairments. *See Trevizo*, 871 F.3d at 679-80.

Furthermore, this is not a situation where plaintiff sought no treatment at all for his mental impairments. The ALJ noted that plaintiff did not pursue "medication" for his mental health impairments. AR 670. Plaintiff did attend therapy, however. AR 1449-93, 1509-11. Then in September 2017, after plaintiff seriously contemplated suicide, leading his daughter to call the police to take him to an emergency room, plaintiff finally consented to try medication. AR 1734-35.

For all of these reasons, failure to seek treatment was not a specific and legitimate reason to discount Dr. Wheeler's opinions.

The ALJ erred by failing to offer any specific and legitimate reason to discount Dr. Wheeler's opinions.

### 2. Floyd D. Smith, M.D.

Treating physician Dr. Smith opined in July 2017 that plaintiff is "NOT … capable of work even if it involves a sedentary job." AR 1706.

The ALJ noted that "a finding of disability is strictly reserved for the Commissioner." AR 671. However, although an ALJ is not bound by the "opinions of the claimant's physicians on the ultimate issue of disability, … he cannot reject them without presenting" legally sufficient reasons for doing so. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *see* SSR 96-5p, 1996 WL 374183, at *2 (S.S.A. July 2, 1996) ("the regulations provide that the final responsibility for deciding issues such as [whether an individual is 'disabled'] is reserved to the Commissioner. Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner.").

The ALJ gave Dr. Smith's opinions "little weight" because they were conclusory, because plaintiff's pain "responded well to oxycodone" and because of "benign findings" in the medical record. AR 671-72.

#### a. Conclusory Opinions

The Commissioner argues that Dr. Smith's opinions were "'conclusory and brief and unsupported by clinical findings.'" Dkt. 21 at 12 (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). In *Tonapetyan*, however, the doctor provided "no objective evidence to support his diagnoses, not even a clinical observation." 242 F.3d at 1149. Here, Dr. Smith made clinical observations of significant pain, inability to sit comfortably, and leg swelling. AR 1706-07. Dr. Smith had been seeing plaintiff for several months and documented the same observations over time. *See* AR 1578 ("moderate distress"), 1591 ("discomfort … can not find a

comfortable position"), 1602 ("edema lower extremities"). In addition, Dr. Smith reviewed other treatment providers' records. *See* AR 1706 ("I have reviewed the patient's Psychiatric, OT, PT, and office notes."). Dr. Smith had referred plaintiff to a physical therapist and reviewed his June 2017 report documenting "significant deficits" in "general strength and resistance testing, mobility testing, and general functional assessment." AR 1605. Plaintiff's "Lower Extremity Functional Scale score [was] 25.5%." AR 1604. There were ample clinical findings in the record to support Dr. Smith's opinions.

The ALJ erred by discounting Dr. Smith's opinions on the grounds that they were conclusory.

### b. Improvement with Oxycodone

In a June 2017 treatment note, plaintiff reported "significant improvement with Oxycodone and is thankful that we found it." AR 1698. Oxycodone provided "the functional improvement to be able to perform the light housework he must perform to maintain his home." AR 1698. Plaintiff reported "tolerable side effects with Oxycodone, which do not outweigh the benefits he has found." AR 1697. The doctor noted that plaintiff "continues to become used to the idea that he needs to rely on low dose opioids in order to be functional and care for himself and home. No evidence of misuse, overuse or diversion. He is stable and compliant. He does not have an addictive personality, whatsoever. He continues to have a phobia of taking pills, but is working through it." AR 1698.

While oxycodone helped, it did not restore plaintiff to full function. He reported a pain level of 8 without medication and 5 with it; his level of function was 2-3 without medication and 4-5 with it. AR 1698. Even with the improvement with oxycodone, in a treatment visit one month later, Dr. Smith observed that plaintiff was "in moderate distress, [s]eated, but moving

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 11

periodically. He cannot seem to find a comfortable position." AR 1706.

Impairments that can be eliminated by treatment are not disabling. *Warre*, 439 F.3d at 1006. But here, although oxycodone improved plaintiff's functioning, it did not eliminate his impairments. And the mild degree of improvement attained was not inconsistent with Dr. Smith's opinions that plaintiff could not perform even a sedentary job. Although plaintiff may have been able to do some light housekeeping to maintain his home, on his own schedule and with the ability to rest and take medication as needed, the record does not show that he was able to do so hour after hour for a normal work day and work week. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, … and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (ability to spend a substantial part of the day performing transferable work skills would contradict disability claims).

Improvement with oxycodone was not a specific and legitimate reason to discount Dr. Smith's opinions.

### c. Benign Findings

Dr. Smith's clinical findings included a mix of normal and abnormal results. *See*, *e.g.*, AR 1579 ("gait normal" but "Romberg test abnormal, falls to the Left with Romberg testing and Tandem Walk"). Other treatment providers found abnormal results, such as decreased leg strength, inability to heel walk or toe walk. *See*, *e.g.*, AR 1728, 1683 ("lumbar went into spasm as a result" of attempting to walk on toes). An MRI showed "spondylotic changes with disk bulging" and an EMG was "minimally abnormal[l]." AR 1374.

The ALJ cited normal imaging and nerve conduction studies, gait, and extremity strength, sensation, and reflexes. AR 671-72. But the ALJ failed to explain why the normal results are more probative than the numerous abnormal results also found in the record. *See*, *e.g.*, AR 1604 ("MRI [shows] lumbar degeneration, stenosis, and disc bulge"), 1605 ("antalgic gait"; "deconditioned"). Merely citing to normal findings does not explain why the ALJ considered the normal results more significant than the abnormal ones. *See Reddick*, 157 F.3d at 725 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Moreover, the "normal" imaging was in January 2015, before the alleged disability onset date, while the abnormal imaging was in September 2015 and August 2016. *Compare* AR 375 *with* 537, 1175, 1374. This suggests the abnormal MRIs may be more probative.

The Commissioner argues that the MRI findings "documented only mild to moderate changes" and the Ninth Circuit has upheld claimant credibility determinations that relied in part on similar MRI results. Dkt. 21 at 13 (citing *Burch*, 400 F.3d at 681 and *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). But in *Johnson*, the ALJ relied not on the MRI but on the fact that the claimant's doctor "prescribed only 'conservative treatment[,]' suggesting a lower level of both pain and functional limitation" than the claimant alleged. 60 F.3d at 1434. And in *Burch*, "mild" findings were only "a factor that the ALJ can consider in his credibility analysis." 400 F.3d at 681. Neither case stands for the proposition that the words "mild" or "moderate" in MRI findings are a specific and legitimate reason to discount a doctor's opinions.

The Court concludes that benign medical findings did not provide a specific and legitimate reason to discount Dr. Smith's opinions.

The ALJ erred by discounting Dr. Smith's opinions without providing a specific and

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 13

legitimate reason.

**C.      Plaintiff's Testimony**

At the August 2017 hearing, plaintiff testified that he needs a tall cane or walker to get around. AR 694-95. He can walk about 300 yards with an assistive device. AR 699. He can only stand for a couple of minutes unassisted. AR 700. Plaintiff uses oxycodone and ibuprofen to treat his pain. AR 696. He cannot take too much oxycodone or he will get "dizzy, which increases [his] anxiety and panic." AR 696. Plaintiff experiences symptoms of pain and tightness in his chest and numbness in his left arm. AR 692. He gets "blurred vision, but it's more of an out-of-body experience; and then panic; and then the need to get away from people and lie down." AR 693.

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 678.

The ALJ discounted plaintiff's testimony as contradicted by benign clinical findings, improvement with conservative treatment, and daily activities. AR 667-69.

**1.      Clinical Findings**

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ found that "imaging and nerve conduction studies revealed completely benign

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 14

findings." AR 667. Substantial evidence does not support this finding, because September 2015 and August 2016 MRI studies showed abnormal results. *See* AR 537 ("degenerative changes"), 1175 ("Spondylotic changes with disc bulging"). Nerve conduction studies also showed abnormalities. AR 391 ("chronic L5 nerve root irritation/radiculopathy"). These are not completely benign findings.

As discussed in greater detail above, the record contained a mix of normal and abnormal results, and the ALJ failed to explain why she found the normal ones more persuasive. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) ("[E]ven if the ALJ had given facially legitimate reasons for his partial adverse credibility finding, the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy."). The ALJ cited normal gait and extremity strength, sensation and reflexes. AR 668. But plaintiff's alleged disability is based primarily on back pain. The straight leg raise test can help locate the origin of back pain, but plaintiff's own doctors did not appear to disbelieve his pain complaints when the result was negative. *See*, *e.g.*, AR 1683 (straight leg test negative; but attempt to walk on toes caused lumbar spasms).

The Commissioner and the ALJ both find it significant that plaintiff reported to a psychiatrist that "his VA doctors have advised him that 'a lot' of the pain is 'in [his] head,' and so they wanted him to see psychiatry." AR 1574; *see* AR 668, Dkt. 21 at 15. This simply illustrates the principle that the degree of pain is subjective. "The amount of pain caused by a given physical impairment can vary greatly from individual to individual." *Fair*, 885 F.2d at 601. That plaintiff had a mixture of physical and psychological contributions to his pain was not a clear and convincing reason to discount his testimony.

The Commissioner states that plaintiff alleged problems with concentration and anxiety,

and argues that his allegations conflict with minimal treatment, improvement with therapy, and "strong cognitive functioning…." Dkt. 21 at 16. Plaintiff indicated that pain interfered with his concentration and caused anxiety. AR 77. The Commissioner's arguments miss the mark. Plaintiff sought treatment for the underlying problem—his *pain*; therapy only helped his panic attacks decrease from daily to weekly; and plaintiff did not allege any cognitive problems, but the record does show that pain interfered with his concentration (*see* AR 1019).

Benign medical findings were not a clear and convincing reason to discount plaintiff's testimony.

### 2. Improvement with Conservative Treatment

A conservative course of treatment may discredit a claimant's allegations of disabling symptoms. *See*, *e.g.*, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (over-the-counter pain medication is "conservative treatment" sufficient to discredit a claimant's testimony regarding allegedly disabling pain). However, pain treatment with opioid analgesics generally is not considered conservative. *See Kager v. Astrue*, 256 F. App'x 919, 923 (9th Cir. 2007) (rejecting adverse credibility determination premised on the absence of significant pain therapy where the claimant took prescription pain medications including Methocarbomal and the narcotic analgesics Roxicet and Valium); *see also Hanes v. Colvin*, 651 F. App'x 703, 706 (9th Cir. 2016) (narcotic painkillers along with spinal injections and radiofrequency ablation not conservative), *Abbott v. Astrue*, 391 F. App'x 554, 560 (7th Cir. 2010) (describing hydrocodone as a "strong pain reliever").

Plaintiff experienced improvement with oxycodone. The level of improvement, however, was not sufficient to contradict his testimony, as discussed further below.

### 3. Daily Activities

An ALJ may discount a claimant's testimony based on daily activities that either contradict her testimony or that meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639.

The ALJ stated that plaintiff "claimed during the August 2017 hearing that he spends most of his time curled up on the couch at home." AR 668. What plaintiff actually testified is that he has "been alone most of the time. So" – if he experiences a panic attack – he "just curl[s] up on [his] couch at home."[4] AR 694. The ALJ discounted plaintiff's testimony because "he is able to manage self-care, prepare simple meals, perform light household chores, drive, and shop" and "occasionally socializes with friends." AR 669. While these activities might be inconsistent with spending most of his time curled up on the couch at home, they are not inconsistent with plaintiff's actual testimony. "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Although plaintiff may have been able to do some light housekeeping to maintain his home, on his own schedule and with the ability to rest and take medication as needed, the record does not show that he was able to perform work-like activity hour after hour for a normal work day and work week. *See Fair*, 885 F.2d at 603 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, … and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it

---

[4] At the 2016 hearing, plaintiff testified that for the last few weeks he had been lying down 30 to 40% of the time and, before that, 10 to 15% of the time. AR 64.

1 | might be impossible to periodically rest or take medication.").

2 | The ALJ also cited "notes in the record regarding the claimant exercising on the elliptical
3 | at the gym and tending to firewood." AR 669 (citing AR 555, 559). At one physical therapy
4 | appointment in October 2015, plaintiff reported "decreased pain over the weekend" and was
5 | "able to use the elliptical at the gym…." AR 555. The decrease in pain was short-lived,
6 | unfortunately, and there appear to be no other references in the record to using the elliptical.
7 | After seven sessions, plaintiff reported that "he has not had a change in pain at all…." AR 566.
8 | Using an elliptical machine once is not inconsistent with plaintiff's testimony. *See Garrison*,
9 | 759 F.3d at 1015 (relief of pain "for only variable, brief periods of time, ranging from a couple
10 | of months to a few days" is not inconsistent with testimony of near-constant pain).

11 | The only reference to firewood is plaintiff's report in October 2015 that "he gets a lot of
12 | blurred vision when he is doing a lot of bending such as with firewood at his house." AR 559.
13 | The fact that bending worsens his symptoms is consistent with plaintiff's testimony.

14 | None of the daily activities the ALJ cited was a clear and convincing reason to discount
15 | plaintiff's testimony.

16 | The Court concludes the ALJ erred by failing to provide any clear and convincing reason
17 | to discount plaintiff's testimony.

18 | **D.  Scope of Remand**

19 | Plaintiff contends the Court should remand for an award of benefits or, in the alternative,
20 | for further administrative proceedings. Dkt. 20 at 18. Only in rare circumstances should the
21 | Court remand a case for benefits. *See Treichler v. Colvin,* 775 F3d 1090, 1099 (9th Cir. 2014).
22 | The Court may remand for further proceedings if enhancement of the record would be useful.
23 | *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits

where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. The Court has flexibility, however, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

Here, further proceedings would not only be useful but are necessary. Even if Dr. Wheeler's opinions are credited as true, it is not clear how the opined limitations would be translated into an RFC. For example, she opined that plaintiff would have a "very significant" limitation on the ability to complete a normal work day and work week, but it is unclear how much off-task time that would result in, and thus the record contains no evidence supporting a determination of whether employers would tolerate that level of off-task time. *See* AR 1017. And as much as plaintiff would like to read Dr. Smith's opinion to mean that plaintiff is disabled for purposes of Social Security, the record does not show that Dr. Smith is familiar with the Social Security disability regulations. Dr. Smith may have meant that plaintiff could not sit for eight hours a day, but may not have considered whether plaintiff could manage with a sit/stand option. It is unclear as well how plaintiff's own testimony would translate into an RFC. Accordingly, because plaintiff's entitlement to benefits is not clear and the record must be developed further, the Court remands the case for further administrative proceedings.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. §

405(g).

On remand, the ALJ should reassess the opinions of Dr. Wheeler and Dr. Smith, reevaluate plaintiff's testimony, reformulate plaintiff's RFC as needed and proceed to steps four and five as appropriate.

DATED this 18th day of January 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE